NAOMI MIZUSHIMA, Appellant and Cross-Respondent, *v.* SUNSET RANCH, INC., a Nevada Corporation, Respondent and Cross-Appellant.

No. 17022

May 29, 1987                              737 P.2d 1158

---

*Stokes, Terry, Winter & Wessel,* Carson City; *Lambrose, Fitz-Simmons & Perkins,* Carson City, for Appellant and Cross-Respondent.

*Julian C. Smith, Jr.* and *Pauline M. Simmons,* Carson City, for Respondent and Cross-Appellant.

*Milos Terzich, Minden,* and *Peter Chase Neumann,* Reno, for Amicus Curiae for Nevada Trial Lawyers Association.

## OPINION

By the Court, STEFFEN, J.:

The primary issue of this appeal is whether and to what extent the doctrine of assumption of risk remains a viable defense to a tort action for negligence in the State of Nevada. We conclude that the variety of assumption of risk here present is subsumed within Nevada's law of comparative negligence. Accordingly, the judgment must be reversed and the cause remanded for a new trial.

The factual predicate for the action filed by the injured plaintiff-appellant, Naomi Mizushima, against defendant-respondent Sunset Ranch, Inc. (Sunset) and defendant Travel Systems, Ltd. began when Naomi and a companion were attracted to the Zephyr Cove Riding Stables, owned and operated by Sunset. Before receiving their mounts, Naomi and her friend were asked to enter their names, addresses and riding ability on a ''sign-up'' sheet. Although Naomi had been ''out of the saddle''

for a number of years, she had ridden before and evaluated herself as a "good rider" on Sunset's registration form.

Naomi was assigned a horse with the bland-sounding name of "Little Bit." Naomi testified that she expected her animal to conform to the gentle, slow profile of a typical stable horse. Indeed, Sunset's witnesses characterized Little Bit as a lazy beginner's horse, orphaned and bottle-fed, who was safe for grandmothers and babies to ride. In any event, Naomi mounted Little Bit and she and her friend rode off for an allotted hour's enjoyment on horseback. As the riders were returning to the trailhead, Little Bit apparently sensed the nearness of home and hay, bolted, and left Naomi aground in his wake. Naomi's witnesses described Little Bit as a three-year-old gelding who was much too young, spirited and unpredictable for casual riders. Unfortunately, Naomi's incident was not the first time Little Bit decided to take leave of his rider. Trial evidence revealed that a thirteen-year-old child had previously sustained a serious head injury when thrown by the same animal.

Naomi's experience with Little Bit and the Zephyr Cove Riding Stables was near catastrophic. Her injuries included a fractured lumbar spine that required two surgeries and an extended period of hospitalization and therapy.

Naomi's theory at trial was that Sunset was negligent in failing to provide safe recreation for its business invitee.[1] In particular, the injured plaintiff focused on Little Bit as a horse that was unsuitable for use by occasional riders. Naomi and her riding companion also testified that Sunset extended no offer to provide them a guide during their ride.

Sunset presented evidence tending to support the premise that Naomi's injuries were proximately caused by her own negligence. In addition, Sunset relied on the sign-up sheet as evidence that Naomi assumed the risk of injury when she rented Little Bit, or that she waived any claim she might have against respondent for her injuries. The following language appeared at the top of the form Sunset referred to as a "sign-up sheet":

> I, the undersigned, assume all responsibility for horse and equipment, and all liability. It is understood that the management is not liable in case of accident. I also agree to pay for damage to horse or equipment and special charge for overridden horse.

Below this language, in larger type, there was a statement which said "all patrons ride at their own risk."

[1]Travel Systems, Ltd. holds a special use permit from the United States Forest Service covering the general area and operation known as the Zephyr Cove Resort at Lake Tahoe. Sunset subleased the Zephyr Cove stable operation from Travel Systems, Ltd. It is unnecessary to consider appellant's theory of liability against Travel Systems, Ltd., who is not a party to this appeal.

The trial court concluded that the assumption of risk doctrine survived Nevada's enactment of a system of comparative negligence. Accordingly, the jury was instructed on the law of assumption of risk as a complete defense to Naomi's entitlement to damages. The jury returned general defense verdicts along with a verdict allocating seventy percent negligence to Naomi and thirty percent negligence to Sunset.

In analyzing the status of the assumption of risk doctrine in Nevada, it is essential to differentiate between the species comprising the doctrinal genus. Express assumption of risk is unaffected by our holding, since its vitality stems from a contractual undertaking that expressly relieves a putative defendant from any duty of care to the injured party; such a party has consented to bear the consequences of a voluntary exposure to a known risk. *See* O'Ferrell v. Southern Nevada Off-Road Enthusiasts, Ltd., 195 Cal.Rptr. 90 (Ct.App. 1983); Celli v. Sports Car Club of America, Inc., 105 Cal.Rptr. 904 (Ct.App. 1972); O'Connell v. Walt Disney World Co., 413 So.2d 444 (Fla.Dist.Ct.App. 1982); Willard Van Dyke Prod. v. Eastman Kodak Co., 189 N.E.2d 693 (N.Y. 1963). Hereafter we will consider the question of an express assumption of risk as it relates to the language of Sunset's sign-up sheet.

There are three discrete types of implied assumption of risk. The first, often referred to as primary implied assumption of risk, may be described as resulting from a relationship that a plaintiff voluntarily accepts involving a lack of duty in the defendant and known risks which the plaintiff impliedly assumes. A classic example is the baseball spectator who imputedly understands that the players are under no duty to refrain from hitting the ball into areas hazardous to the spectator's well-being. The second variety of implied assumption of risk is characterized by the voluntary encountering of a known risk created by a defendant's negligence. In this instance, plaintiff's decision to engage the risk may be reasonable, cautious, or both, when assessed objectively against the degree of risk. An example of this aspect of the doctrine may be represented by a plaintiff who continues renting a piece of machinery known to be defective because the lower rental cost is deemed to be of greater weight than the added risk of injury. The third variety of implied assumption of risk involves an unreasonable encountering of a known risk, amounting to contributory negligence on the part of the plaintiff. This type of situation would exist where a plaintiff takes an unnecessary and inexpedient shortcut to his destination, confronting known and hazardous obstacles along the course of the abbreviated route. In each of the species of the doctrine, including an express assumption of risk, the plaintiff would be denied recovery.

The assumption of risk doctrine was given birth by the common law to facilitate the perceived needs of the industrial revolu-

tion.[2] Initially designed to operate in the employment arena where employees were encountering hazards in the working place, the doctrine gradually expanded to encompass virtually all actions sounding in negligence.[3] It is characteristic of the common law tradition, however, to continue to question, probe and refine legal doctrines. Inexorably, the process of repeated evaluation of the doctrine here questioned has led to mounting criticism and eventual abrogation by common law courts and legislatures.[4]

The legislative history surrounding the advent of Nevada's comparative negligence statute, NRS 41.141, supplies no basis for divining legislative intent concerning the impact of the statute on the assumption of risk doctrine. Moreover, the text of the statute contains no hint on the subject.[5] We are thus left with the same task undertaken by other courts to decide the issue according to common law principles.

We perceive as clear the purpose of the comparative negligence statute to eradicate the harsh effect of a plaintiff's contributory negligence whenever such negligence is not greater than that of the source against which recovery is sought. In our view, it is equally clear that any variety of an implied assumption of risk is merely a circumlocution for the preclusive form of contributory negligence the statute sought to eliminate. No matter how the

---

[2]Fleming, *Assumption of Risk*, 61 Yale L.J. 141, 154 (1952).

[3]Salinas v. Vierstra, 695 P.2d 369, 372 (Idaho 1985).

[4]*See* Cummins v. King & Sons, 453 P.2d 465 (Alaska 1969); Li v. Yellow Cab Co., 532 P.2d 1226 (Cal. 1975); Brown v. Kreuser, 560 P.2d 105 (Colo.Ct.App. 1977); Blackburn v. Dorta, 348 So.2d 287, 290 (Fla. 1977); *Salinas*, 695 P.2d 369; Smith v. Blakey, 515 P.2d 1062 (Kan. 1973); Duffy v. Midlothian Country Club, 415 N.E.2d 1099 (Ill.App.Ct. 1980); Wilson v. Gordon, 354 A.2d 398 (Me. 1976); Springrose v. Willmore, 192 Country Club, 415 N.E.2d 1099 (Ill.App.Ct. 1980); Wilson v. Gordon, 354 A.2d 398 (Me. 1976); Springrose v. Willmore, 192 N.W.2d 826 (Minn. 1971); Kopischke v. First Continental Corp., 610 P.2d 668 (Mont. 1980); Bolduc v. Crain, 181 A.2d 641 (N.H. 1962); McGrath v. American Cyanamid Co., 196 A.2d 238 (N.J. 1963); Williamson v. Smith, 491 P.2d 1147 (N.M. 1971); Wentz v. Deseth, 221 N.W.2d 101 (N.D. 1974); Anderson v. Ceccardi, 451 N.E.2d 780 (Ohio 1983); Rutter v. Northeastern Beaver County School Dist., 437 A.2d 1198 (Pa. 1981); Farley v. M M Cattle Co., 529 S.W.2d 751 (Tex. 1975); Moore v. Burton Lumber & Hardware Co., 631 P.2d 865 (Utah 1981); Lyons v. Redding Constr., 515 P.2d 821 (Wash. 1973); Gilson v. Drees Bros., 120 N.W.2d 63 (Wis. 1963); Brittain v. Booth, 601 P.2d 532 (Wyo. 1979).

[5]The statute states in pertinent part:
    In any action to recover damages for death or injury to persons or for injury to property in which contributory negligence may be asserted as a defense, the contributory negligence of the plaintiff or his decedent does not bar a recovery if that negligence was not greater than the negligence or gross negligence of the person or persons against whom recovery is sought, but any damages allowed must be diminished in proportion to the amount of negligence attributable to the person seeking recovery or his decedent.

assumption of risk scenario is depicted, it is translatable into a degree of negligent conduct by the plaintiff. And yet, such scenarios operate as a complete bar to a plaintiff's right of recovery.

[Headnote 1]

The defense of assumption of risk is not favored.[6] It continues to vex and confuse as a masquerade for contributory negligence. Moreover, it focuses on a lack of duty in the defendant rather than the more compelling issue of comparative breach of duty by the parties. In that regard, the doctrine faces backward, emphasizing escape more than accountability and inertia more than progress. In short, we are unable to ascertain any productive reason why any species of implied assumption of risk should survive the beneficent purposes and effect of Nevada's comparative negligence statute.[7] We therefore hold that, with the single exception of an express assumption of risk, the assumption of risk doctrine has been subsumed by our comparative negligence statute. Hereafter, any reference to an assumption of risk defense in Nevada shall be so limited.

Although Naomi signed Sunset's registration or sign-up sheet containing assumption of risk language, it is clear, and we so hold, that no express assumption of risk resulted. There was no indication on the form that Sunset's invitees were consenting to assume the risk of injury caused by Sunset's own negligence. Further, the record reflects no discussion on the subject of liability at the time Naomi and her friend signed the registration form, or at any time thereafter prior to the accident. It is clear, therefore, that neither the language of the sign-up sheet nor any discussion pertaining thereto created any basis for a defense of express assumption of risk.

Since the exculpatory language of Sunset's registration form provided no foundation for an assumption of risk instruction to

---

[6]*Blackburn,* 348 So.2d at 289.

[7]Several courts have held that the doctrine of primary implied assumption of risk has survived their comparative negligence statutes. As noted above, this species of assumption of risk refers to a relationship voluntarily accepted with an imputed understanding that the other party has no duty to the injured plaintiff. The classic example of this is the spectator injured by a foul ball at a baseball game, *see supra.*

We perceive no valid reason for leaving primary implied assumption of risk intact. In virtually every instance, including the injured spectator, liability can be analyzed in the context of the conduct of the actor and the injured party, weighed against a standard of care dictated by the circumstances. Thus, there is no arbitrary bar to recovery and no sweeping exemption from duty accorded a defendant. The determination of duty is left to the jury as a factor in the comparative negligence analysis.

the jury, plaintiff's objection to the admission of the form, or at least that portion of the form, should have been sustained. Whether isolated or in combination with the jury instruction it served to create, the introduction into evidence of the exculpatory language of the sign-up sheet was prejudicial error.

We have previously held, Otterbeck v. Lamb, 85 Nev. 456, 463, 456 P.2d 855, 860 (1969), that an erroneous instruction regarding duty or standard of care is grounds for reversal. The effect of the offending instruction on assumption of risk in the instant case[8] was to relieve respondent of any duty of care toward Naomi upon a finding by the jury that she voluntarily and knowingly had exposed herself to a known danger. The instruction was prejudicial and should not have been given, not only because it lacked both a legal and factual predicate, but also because it cast the jury adrift in a sea of speculation concerning the nature, degree and preclusive effect of the injured plaintiff's knowledge of the dangers she faced in riding a Sunset horse. Was it sufficient to know that accidents occur as an infrequent but inevitable concomitant to riding horses? Or was Naomi's knowledge that accidents can happen on horseback sufficient under the instruction, when combined with the warning on the sign-up sheet that "all patrons ride at their own risk?" Although Naomi had never ridden Little Bit previously and knew nothing of his background or disposition, did the fact that she evaluated herself as a "good" rider impute to her the knowledge that her horse might misbehave? Any one or more of the foregoing factors, and others not mentioned, may have caused the jury to conclude that Naomi's knowledge precluded an award of damages for her injuries.

The fact that the jury returned a finding of seventy percent negligence against Naomi and thirty percent against Sunset in addition to a general defense verdict does not save respondents' judgment. It is simply impossible to determine the extent to which the comparative negligence assignment was affected by concentration on the degree of Naomi's alleged assumption of risk, rather than Sunset's duty of care to its business invitees. We are thus unable to accept respondent's contention that the error was harmless.

Of course, we cannot predict whether a new trial will change the result of this litigation. A jury, properly instructed and free from the influence of the irrelevant, prejudicial language of the sign-up sheet, may still conclude that Naomi's conduct was more

---

[8]The relevant instruction states:

A person has assumed a risk when she freely, voluntarily and knowingly, places herself in, or remains in, a position of danger, and voluntarily exposes herself to a danger which she knows does exist.

A person who thus assumes a risk is not entitled to recover for damages which resulted from the danger to which she thus exposed herself.

culpable than that of respondent in contributing to her injuries. We are not concerned with such considerations. We are persuaded, however, that Naomi is entitled to pursue her cause unencumbered by the prejudicial rulings that infected her first trial.

Our disposition of this appeal makes it unnecessary to consider other issues raised by the parties. Likewise, it renders moot Sunset's cross-appeal concerning the denial of attorney's fees by the trial court.

The judgment is reversed and the cause remanded for a new trial in accordance with this opinion.

GUNDERSON, C. J., and YOUNG, SPRINGER and MOWBRAY, J J., concur.