KENNEDY, Judge (concurring in part, dissenting in part). {43} My colleagues reject nearly one hundred years of American jurisprudence today. By refusing to adopt the baseball rule, they isolate our state from others having already considered the matter and ignore the clear sign post provided by our Supreme Court in McFatridge, 69 N.M. at 271, 365 P.2d at 918. I believe that the baseball rule adequately establishes a reasonable standard of care that may be followed as a matter of law. The majority slides from a legal standard to one that promotes fact-based uncertainty where such uncertainty does not belong. {44} The majority opinion stakes much of its argument on the idea that New Mexico juries are capable of determining for themselves whether, in a given factual scenario, a stadium operator reasonably protects its patrons from harm. I agree, insofar as juries determine whether the facts of any given case violate a particular duty of care. But the issue of whether a party owes a duty of care to another is a matter of law, not fact, and such conclusions are clearly left in the hands of New Mexico’s courts. Calkins v. Cox Estates, 110 N.M. 59, 62, 792 P.2d 36, 39 (1990) (holding that “[t]he existence of a duty is a question of policy to be determined with reference to legal precedent, statutes, and other principles comprising the law”); Schear v. Bd. of County Comm’rs, 101 N.M. 671, 672, 687 P.2d 728, 729 (1984) (holding that “[wjhether a duty exists is a question of law for the courts to decide”). Thus, as the court held in Turner v. Mandalay Sports Entertainment, LLC, 180 P.3d 1172, 1175-76 (Nev.2008), the baseball rule “does not eliminate the stadium owner’s duty to exercise reasonable care under the circumstances ... rather, it defines that duty in detail.” Id. (footnote omitted). The majority, by putting the legal question to the jury, reverse the batting order. The existence of a duty is the standard a jury applies to the facts, not an ad hoc judgment as invited by the majority. {45} A specific duty founded upon what constitutes reasonable care has been well-established for this exact purpose — the conduct of baseball games. The majority’s rejection of the baseball rule places New Mexico in isolation from most other states that have considered it. American jurisdictions overwhelmingly embrace some form of the rule, holding that a stadium owner’s duty to spectators is limited to screening the dangerous area behind home plate. Sciarrotta v. Global Spectrum, 194 N.J. 345, 944 A.2d 630, 632 (2008); Turner, 180 P.3d at 1175-76; Lawson ex rel. Lawson v. Salt Lake Trappers, Inc., 901 P.2d 1013, 1015 (Utah 1995); Arnold v. City of Cedar Rapids, 443 N.W.2d 332, 333 (Iowa 1989); Powless v. Milwaukee County, 6 Wis.2d 78, 94 N.W.2d 187, 189 (1959); Morris v. Cleveland Hockey Club, 157 Ohio St. 225, 105 N.E.2d 419, 426 (1952); Erickson v. Lexington Baseball Club, 233 N.C. 627, 65 S.E.2d 140, 141 (1951); Quinn v. Recreation Park Ass’n, 3 Cal.2d 725, 46 P.2d 144, 146 (1935) (in bank); Brisson v. Minneapolis Baseball & Athletic Ass’n, 185 Minn. 507, 240 N.W. 903, 904 (1932); Kavafian v. Seattle Baseball Club Ass’n, 105 Wash. 215, 181 P. 679, 679 (1919) (en banc) (per curiam); Pakett v. The Phillies L.P., 871 A.2d 304, 307-08 (Pa.Commw.Ct.2005); Benejam, 635 N.W.2d at 223; Maytnier, 225 N.E.2d at 84; Hunt v. Thomasville Baseball Co., 80 Ga. App. 572, 56 S.E.2d 828, 829 (1949); Torino v. New Orleans Baseball & Amusement Co., 16 La.App. 95, 133 So. 408, 409 (1931); Crane v. Kansas City Baseball & Exhibition Co., 168 Mo.App. 301, 153 S.W. 1076, 1077 (1913). As the court stated in Benejam, “Our review of precedents from other jurisdictions finds overwhelming, if not universal, support for the [baseball] rule that [the] defendant advocates.” [1] Benejam, 635 N.W.2d at 221 (emphasis added) (footnote omitted). {46} Each of the states contiguous to New Mexico have likewise adopted some form of the baseball rule. See Colorado Baseball Spectator Safety Act of 1993, Colo.Rev.Stat. Ann. § 13-21-120 (1994) (statutorily adopting the baseball rule); Bellezzo v. State, 174 Ariz. 548, 851 P.2d 847, 852-53 (Ct.App.1992); McNiel, 268 S.W.2d at 246. At least three other states have gone so far as to extend the rule to ice hockey arenas. Modec v. City of Eveleth, 224 Minn. 556, 29 N.W.2d 453, 456 (1947); Ingersoll v. Onondaga Hockey Club, 245 A.D. 137, 281 N.Y.S. 505, 508 (N.Y.App.Div.1935); Morris v. Cleveland Hockey Club, 157 Ohio St. 225, 105 N.E.2d 419, 426 (1952). And still others have defined reasonable duties to spectators at automobile racing events, Capital Raceway Promotions, Inc. v. Smith, 22 Md.App. 224, 322 A.2d 238 (Spec.App.1974), and wrestling matches, Davis v. Jones, 100 Ga.App. 546, 112 S.E.2d 3 (1959). But perhaps most persuasive is the opinion of our own Supreme Court. {47} McFatridge, involved a suit filed by a spectator to a Harlem Globetrotter game in Tucumcari, New Mexico. Among other allegations, the plaintiff claimed that the defendant team owner was negligent in not protecting the plaintiff from being struck in the face with a basketball. 69 N.M. at 272-73, 365 P.2d at 919. After a jury verdict for the plaintiff, the defendant appealed. Id. He urged the court to recognize the baseball rule and apply it to basketball games. Id. at 276, 365 P.2d at 921. The Court refused to extend the rule, but it did so only after explaining the rule’s unique applicability to the game of baseball. That there is danger from being ... struck by balls ... in certain locations at baseball games which would be known to fans of the game is clear and from this fact arises the custom to protect the areas of greatest danger, and the rule as stated by the note writer[2] ... we are not advised of any similar* danger being present at basketball games[.] Id. at 277, 365 P.2d at 922. Thus, although not a formal adoption of the baseball rule, our Supreme Court clearly noted the rule’s general acceptance as an American “custom” and considered at least some of the several reasons for its acceptance. In distinguishing the rule between baseball and basketball, the Court clearly asserted the rule’s applicability to baseball. The current writers of American Law Reports agree. They cite McFatridge with the parenthetical “(apparently recognizing rule)” immediately afterward. James L. Rigelhaupt, Jr., Annotation, Liability to Spectator at Baseball Game Who Is Hit by Ball or Injured as Result of Other Hazard of Game, 91 A.L.R.3d 24, § 3[a] (1979). We should unequivocally adopt the rule here. {48} “Spectators who attend a sporting event often run the risk of injury from foul balls, errant pucks, clashing bodies, teeter-tottering stands, and more.” Walter T. Champion, Jr., “At the Ol’ Ball Game” and Beyond: Spectators and the Potential for Liability, 14 Am. J. Trial Advoc. 495, 496 (1991). Indeed, such risks compel many spectators to attend sporting events in the first place, and many a baseball fan attends in the hope of walking away with a home-run or foul ball. But when the majority’s opinion arrives at its logical conclusion, a specific duty of care that has remained intact for baseball falls to a general rule that does not recognize the necessary factual distinction between a general obligation of care and one developed over years for the specific application. A fair balance has already been struck as a matter of law; no duty was breached. While tragic in the extreme, the injuries suffered in this case did not result from any negligence in the conduct of the game or design of the stadium. {49} I would affirm the district court in all respects and concur with my colleagues only in those issues where they affirm the district court. . The baseball rule does not require the jurisdiction to observe assumption of the risk. Indeed, many comparative fault jurisdictions have adopted it. See Neinstein v. Los Angeles Dodgers, Inc., 185 Cal.App.3d 176, 229 Cal.Rptr. 612 (1986); Kavafian, 181 P. at 679. . It is generally held or recognized that where a spectator who has knowledge of the game of baseball is given a choice between seats that are protected by screens and those that are not, and elects, or by reason of the protected seats being filled, is required, to sit in the unscreened area of the stands, he thereby ... accepts the reasonable hazards inherent in and incident to the game, and may not recover for injuries received from batted or wildly thrown balls. McFatridge, 69 N.M. at 276, 365 P.2d at 922 (internal quotation marks and citation omitted).