**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| RUDY RIVERA, *Plaintiff-Appellant*, v. CORRECTIONS CORPORATION OF AMERICA, *Defendant-Appellee.* | No. 20-15651 D.C. No. 2:17-cv-02776-JCM-NJK OPINION |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted March 9, 2021
Las Vegas, Nevada

Filed May 28, 2021

Before: Jacqueline H. Nguyen and Mark J. Bennett, Circuit
Judges, and M. Douglas Harpool,* District Judge.

Opinion by Judge Nguyen

---

\* The Honorable M. Douglas Harpool, United States District Judge
for the Western District of Missouri, sitting by designation.

## SUMMARY**

### Prisoner Civil Rights

The panel reversed the district court's summary judgment in favor of defendant CoreCivic, formerly Corrections Corporation of America, in an action brought under Nevada state law for torts related to plaintiff's year-long detention in a private prison without a court hearing.

The U.S. Marshals Service arrested plaintiff on a warrant for marijuana-related charges and housed him in a private prison run by CoreCivic. Instead of being brought promptly to court, plaintiff spent 355 days in solitary confinement without a court appearance. After his release, plaintiff sued CoreCivic and CoreCivic employees in federal court for false imprisonment, negligence, and intentional infliction of emotional distress under Nevada law. The district court entered judgment in CoreCivic's favor, finding that CoreCivic did not cause plaintiff's prolonged detention because it could not schedule a hearing for plaintiff or release him.

The panel held that a reasonable jury could find that CoreCivic caused plaintiff's prolonged detention by failing to notify the Marshals of his continued detention without a hearing and by discouraging and preventing him from seeking outside help. A jury could reasonably find that CoreCivic breached a duty to plaintiff given that plaintiff's evidence, if credited by a jury, could easily establish that

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

CoreCivic failed to exercise reasonable care when its employees did not inform the Marshals of plaintiff's prolonged detention, told plaintiff that he just needed to wait, implied that nothing could be done to trigger a hearing, and failed to inform him that he was in the legal custody of the Marshals and could request to speak with a deputy who was regularly at the detention center. The panel held that plaintiff had established a triable issue as to the elements of his false imprisonment and negligence claims.

The record also showed that plaintiff established a triable issue as to each element of his claim for intentional infliction of emotional distress. A jury could reasonably find CoreCivic's actions extreme or outrageous given the nature of plaintiff's liberty interest, the egregious length of his detention without arraignment, the ease with which CoreCivic could have corrected the problem, and the callousness of its disregard.

**COUNSEL**

Mitchell S. Bisson (argued), 911 Law Group, Las Vegas, Nevada, for Plaintiff-Appellant.

Kevin L. Nguyen (argued), Rachel Love, and Jacob Lee, Struck Love Bojanowsky & Acedo PLC, Chandler, Arizona, for Defendant-Appellee.

## OPINION

NGUYEN, Circuit Judge:

The U.S. Marshals Service arrested Rudy Rivera in California on a warrant issued by the District of Nevada for marijuana-related charges. The next day, a magistrate judge in the Eastern District of California ordered Rivera's transfer "as soon as possible" to the District of Nevada for an arraignment and detention hearing. The Marshals transported Rivera to Nevada about a week later and housed him in a private prison run by CoreCivic. But instead of being brought promptly to court, Rivera spent 355 days in solitary confinement without a court appearance. During his detention, Rivera repeatedly told CoreCivic employees, the only individuals beyond fellow detainees with whom he had contact, that he had not been to court and did not have counsel. But CoreCivic employees neither informed the Marshals of Rivera's plight nor took any other steps to remedy the situation. Rivera contends that CoreCivic employees dissuaded him from seeking outside help by telling him to "[j]ust sit there and wait," and that the federal government "does what they want to" and will "get you when they're going to come get you." They also failed to inform him that he was in the custody of the Marshals and could reach out to the Marshals for assistance.

After Rivera finally sent a letter to the Federal Public Defender's Office, he was brought before a federal magistrate judge the very next business day.[1] The court

_____

[1] We take judicial notice of Rivera's arraignment transcript, which he submitted with his appellate briefing. *See* Fed. R. Evid. 201; *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through PACER.").

declared Rivera's prolonged detention "extreme" and "egregious" and ordered his immediate release on a personal recognizance bond. The criminal charges against him were eventually dismissed with prejudice.

Rivera sued CoreCivic in federal court for Nevada torts related to his year-long detention without a court hearing. The district court granted CoreCivic's summary judgment motion on the ground that CoreCivic did not cause Rivera's prolonged detention. We reverse.

## I. Background

### A. U.S. Marshals Service Custody of Individuals Awaiting Federal Trial and Sentencing

The U.S. Marshals Service ("Marshals") is responsible for maintaining custody of individuals detained pending trial or sentencing for federal criminal offenses. In fiscal year 2020, the Marshals received over 160,000 individuals into its custody and, on average, had custody over 62,000 individuals every day.[2] Because the Marshals does not own or operate any detention facilities, it places those in its custody in facilities run by other entities.[3] The Marshals detain the vast majority—around 85 percent—of those in its

---

[2] U.S. Marshals Serv., FY 2020 Annual Report 47–48 (2021), https://www.usmarshals.gov/foia/annual-report-2020.pdf.

[3] U.S. Marshals Serv., Prisoner Operations 2 (2021), https://www.usmarshals.gov/duties/factsheets/prisoner_ops.pdf.

custody outside the federal system through approximately 1,200 contracts with state, local, and private facilities.[4]

## B. CoreCivic's Operation of Nevada Southern Detention Center

CoreCivic, formerly Corrections Corporation of America, operates private prisons, detention centers, and other correctional facilities throughout the United States. It manages an estimated 39 percent of the country's private prison beds.[5] At the end of 2020, the Marshals was the primary customer at eight of CoreCivic's forty-seven facilities, and contracts with the Marshals accounted for 21 percent—$396.3 million—of CoreCivic's 2020 revenue.[6]

The Marshals is the primary customer at Nevada Southern Detention Center ("NSDC"), a CoreCivic detention facility in Pahrump, Nevada that has capacity to detain around 1,000 individuals.[7] While at NSDC, detainees remain in the legal custody of the Marshals, and CoreCivic has no authority to release them or take them to court absent instruction from the Marshals. The Marshals maintains a regular presence at NSDC, but detained individuals interact almost exclusively with CoreCivic employees who provide

---

[4] *Id.* at 1. The Federal Bureau of Prisons detains the remaining individuals. *Id.*

[5] CoreCivic, 2020 Annual Report, Form 10-K 14 (2021), http://ir.corecivic.com/static-files/2d02c7d4-786a-4a48-8c1b-3e2522c511f3.

[6] *Id.* at 7, 15.

[7] *Id.* at 22.

security, transportation, medical care, food services, and programming.

## C. Rivera's 355-day Detention at CoreCivic's Detention Center

In November 2014, the United States indicted Rivera for marijuana-related offenses in the District of Nevada, and a court in the district issued a warrant for his arrest. The Marshals arrested Rivera in California on October 26, 2015, and, pursuant to a magistrate judge's order, soon thereafter transferred him to the District of Nevada for arraignment and a detention hearing. The Marshals transferred Rivera to NSDC on November 4, 2015, just over a week after his arrest. CoreCivic placed Rivera in administrative segregation due to safety concerns based on his status as a gang dropout. Rivera then waited 355 days, until October 24, 2016, for his first hearing in the District of Nevada.

During his detention, Rivera repeatedly informed CoreCivic employees that he had not been to court and did not have counsel.[8] In response to his statements, the employees told him to "[j]ust sit there and wait," and that the federal government "does what they want to" and "[t]hey'll get you when they're going to come get you." Rivera testified that CoreCivic employees did not tell him he was actually in the custody of the Marshals or that he could speak to a Marshals deputy at NSDC to address his concerns. According to Rivera, CoreCivic also failed to give him a

---

[8] Because this is an appeal of a summary judgment order, we "[v]iew[] the evidence and draw[] all inferences in the light most favorable to [Rivera]." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). We therefore recount the facts as Rivera presented them.

detainee handbook, which referenced the Marshals, during his first seven months of detention.

Rivera's interactions with CoreCivic employees led him to believe that his case was proceeding normally and there was no further action he could take to prompt a hearing. He therefore never requested contact information for an attorney, the Marshals, or the court to inform them of his situation.

Rivera wrote to the Federal Public Defender's Office as a year of detention approached to prove to his girlfriend that he had not been to court. The Public Defender's Office received Rivera's letter on Friday afternoon, October 21, 2016 and called the Marshals immediately. The Marshals brought Rivera to court the next business day, Monday, October 24, 2016. A magistrate judge declared Rivera's prolonged detention "extreme" and "egregious" and released him from the building on a personal recognizance bond. The court later dismissed all charges against Rivera with prejudice.

## D.  Procedural History

After his release, Rivera sued CoreCivic and CoreCivic employees in federal court for false imprisonment, negligence, and intentional infliction of emotional distress under Nevada law.[9] The district court granted CoreCivic's summary judgment motion as to all claims and entered judgment in CoreCivic's favor, finding that CoreCivic did

---

[9] Rivera also asserted a cause of action against CoreCivic for negligent infliction of emotional distress, but the district court concluded he failed to state a claim. He also sued several government defendants for constitutional violations, but the court dismissed those claims pursuant to the parties' stipulation.

not cause Rivera's prolonged detention because it could not schedule a hearing for Rivera or release him. Rivera appeals. Because a reasonable jury could find that CoreCivic caused Rivera's prolonged detention by failing to notify the Marshals of his continued detention without a hearing and by discouraging and preventing him from seeking outside help, we reverse and remand.

## II. Jurisdiction and Standard of Review

The district court had jurisdiction pursuant to 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. We review the district court's grant of summary judgment de novo. *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). "Viewing the evidence and drawing all inferences in the light most favorable to the non-moving party, we must determine whether any genuine issues of material fact remain and whether the district court correctly applied the relevant substantive law." *Id.* We will reverse a grant of summary judgment "[i]f a rational trier of fact could resolve a genuine issue of material fact in the nonmoving party's favor." *Id.*

## III. Discussion

### A. A Jury Could Reasonably Find that CoreCivic's Actions Caused Rivera's Prolonged Detention.

Causation is an element of Rivera's claims under Nevada law for false imprisonment, negligence, and intentional infliction of emotional distress.[10] Therefore, to survive

---

[10] *Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 110 P.3d 30, 48 (Nev. 2005) (en banc) (per curiam) (false imprisonment), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670 (Nev. 2008) (en banc); *Turner v.*

summary judgment, Rivera must show that a rational jury could find that CoreCivic's actions caused his prolonged detention. *Bravo*, 665 F.3d at 1083. Put another way, a jury must be able to find that CoreCivic's actions contributed to a delay in his initial hearing in the District of Nevada. *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 & n.3 (Nev. 1983) (per curiam) (a defendant who fails to take a lawfully arrested person to court "within a reasonable time or without unnecessary delay" can be liable for false imprisonment if they "improperly contributed to the delay"). Summary judgment is often improper on the issue of causation because it is "classically [a] question[] of fact." *Klasch v. Walgreen Co.*, 264 P.3d 1155, 1161 (Nev. 2011) (en banc).

Here, CoreCivic argues that the Marshals solely caused Rivera's detention. Rivera counters that CoreCivic also caused his prolonged detention because, if CoreCivic had notified the Marshals of his continued detention or had not misled him to believe that there was nothing he could do to remedy his situation, he would have secured a hearing long before 355 days elapsed. We conclude that a rational jury could reasonably find in Rivera's favor.

In his deposition, Rivera testified that he regularly informed CoreCivic employees that he had not been to court, but CoreCivic never shared this information with the Marshals.[11] Instead, the employees instructed him "just to

---

*Mandalay Sport Ent.*, LLC, 180 P.3d 1172, 1175 (Nev. 2008) (en banc) (negligence); *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000) (intentional infliction of emotional distress).

[11] CoreCivic incorrectly claims that Rivera "fails to point to any testimony" that shows its employees were aware of his prolonged detention. To the contrary, Rivera testified that he repeatedly informed

wait." Rivera's case manager told him that "the federal government does what they want to," and "[t]hey'll get you when they're going to come get you." CoreCivic employees never informed him he was in Marshals custody or that there was a Marshal onsite with whom he could have spoken. CoreCivic also failed to provide him with a detainee handbook, which referenced the Marshals, during his first seven months at NSDC.

Rivera claims that CoreCivic's statements dissuaded him from seeking outside help. When asked why he did not request the Public Defender's Office's contact information earlier, Rivera responded, "I didn't know. I was told just to wait; so I didn't assume. I'm just waiting for the feds to come pick me up and take me to court. . . . I'm being told by staff that's paid to . . . take care of these inmates . . . not to do anything. Just sit there and wait."

Rivera also explained that CoreCivic's failure to inform him about the Marshals's connection to NSDC prevented him from understanding that he could contact the Marshals for help. He testified, "I assumed it's CoreCivic I would have to reach out to. I wasn't told it was a United States Marshal's [sic] facility." He also explained, "[I]f I would

---

his case manager that he had not been to court, did not have an attorney, and did not know the status of his case. He also testified that "[e]very single officer that worked in [administrative segregation] for that year knows that I didn't go to court. Every single officer." This testimony, if accepted by the jury, is more than sufficient to find that CoreCivic was aware of Rivera's prolonged detention. Because a rational jury could find that CoreCivic caused Rivera's prolonged detention by failing to notify the Marshals of his detention and in dissuading and preventing him from seeking other help, we need not determine whether Rivera established a triable issue as to causation based on CoreCivic's failure to track whether Rivera had gone to court.

have known that the staff wasn't responsible for me as they claimed, that it was up to me to go to court, then I would have definitely done something."

On these facts, a rational jury could find that CoreCivic's failure to notify the Marshals of Rivera's plight prolonged Rivera's detention because, had CoreCivic informed the Marshals, it almost certainly would have promptly taken Rivera to court. Indeed, when contacted by the Public Defender's Office, the Marshals immediately acted to bring Rivera before a judge the very next business day.

A rational jury could also find that CoreCivic's actions served to dissuade Rivera from seeking outside help by implying there was nothing anyone but the federal government could do to prompt a hearing and by failing to make clear that he could contact the Marshals with his concerns.[12] As CoreCivic concedes in its briefing, had "Rivera himself . . . simply made an effort to reach out to anyone[, . . .] he would have been released from NSDC long before October 24, 2016."

CoreCivic argues, and the district court agreed, that our decision in *Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245 (9th Cir. 1999), dictates a different outcome. *Brooks*, however, is readily distinguishable.

In *Brooks*, Alameda County, California ("the County") held a federal detainee on behalf of the Marshals for twelve days without arraignment. *Id.* at 1246. After his release, the

---

[12] To be sure, it was not Rivera's responsibility to request a hearing. However, because contacting the Marshals, an attorney, or the court would likely have prompted a hearing, a rational jury could find that CoreCivic's statements and omissions lengthened Rivera's pre-arraignment detention.

detainee sued the County for constitutional violations under 42 U.S.C. § 1983, California false imprisonment, and other violations of California law. *Id.* at 1246–47. The district court dismissed the action for failure to state a claim. *Id.* at 1247. We affirmed, explaining that "[t]he County was without authority either to bring Brooks before a federal magistrate judge itself, because it cannot act for the United States, or to release him, because it cannot ignore the state statute" that prevented it from releasing a federal detainee "until he or she is discharged according to law." *Id.* at 1248. We held that the County was "not a legal cause of Brooks' injury" because it "could not have altered what happened to [him]." *Id.*

CoreCivic is correct that, like the County in *Brooks*, it had no authority to bring Rivera before a judge or release him.[13] But, contrary to CoreCivic's argument, it does not automatically follow that the Marshals alone caused Rivera's prolonged detention and CoreCivic cannot be held liable for contributing to a prolonged detention under any circumstances.

---

[13] As the district court found, the Marshals retained legal custody over Rivera, *see* 18 U.S.C. § 4086; 28 C.F.R. § 0.111(k), and CoreCivic's contract with the Marshals prevented CoreCivic from releasing him. Rivera argues that *Wormley v. United States*, 601 F. Supp. 2d 27 (D.D.C. 2009), establishes that CoreCivic could have released him. We disagree. First, CoreCivic's NSDC contract does not contain a provision allowing CoreCivic to request detainee transfer as did the contract in *Wormley*. *See id.* at 44. Even if it did, the *Wormley* court explained that the contract provision "does not resolve the issue of whether defendants could have remedied plaintiff's situation" by releasing her but, rather, "render[s] plausible plaintiff's claims that defendants could have—and perhaps should have—informed DOC of plaintiff's inquiries regarding her incarceration, an act which possibly could have resulted in her release." *Id.*

Construing the evidence in Rivera's favor, which we must at this stage of the litigation, a jury could reasonably find that CoreCivic's actions prolonged Rivera's detention. Even though CoreCivic could not schedule a hearing for Rivera, it could have almost certainly prompted a hearing by notifying the Marshals of Rivera's plight. As noted above, when the Public Defender's Office informed the Marshals of Rivera's detention, the Marshals brought Rivera to court the next business day. We have no reason to believe the Marshals would have responded differently had CoreCivic, and not the Public Defender's Office, informed them of Rivera's prolonged detention.

The length of Rivera's detention makes this case less like *Brooks* and more like *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470 (9th Cir. 1992). In *Oviatt*, Multnomah County, Oregon detained a man for 114 days without arraignment in his state-court proceedings. *Id.* at 1472. We upheld a jury award in Oviatt's subsequent § 1983 claim, reasoning that if Multnomah County had better tracking systems, it is unlikely Oviatt would have suffered such a lengthy detention. *Id.* at 1478–79. Like in *Oviatt*, and as described above, "it is unlikely that [Rivera] would have spent [355] days in jail without an arraignment, a bail hearing, or a trial" had CoreCivic informed the Marshals of his continued detention. *Id.*

*Brooks*'s procedural posture also distinguishes it from this case. Because *Brooks* was an appeal of a motion to dismiss, the factual record before us was limited. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint."). Unlike the facts here, there was no indication

in *Brooks* that the County was aware Brooks had not been to court or misled or prevented him from seeking outside help.

In sum, we find that Rivera presented sufficient evidence to overcome CoreCivic's summary judgment motion as to causation for each of his claims. A rational jury could find that, in failing to notify the Marshals of Rivera's detention and in dissuading and preventing Rivera from seeking other help, CoreCivic was a cause of Rivera's pre-hearing detention as required to establish claims for false imprisonment,[14] negligence, and intentional infliction of emotional distress.

## B. A Jury Could Reasonably Find that CoreCivic Breached a Duty to Rivera.

To state a claim for negligence, a plaintiff must establish (1) duty; (2) breach; (3) causation; and (4) damages. *Turner v. Mandalay Sport Ent., LLC*, 180 P.3d 1172, 1175 (Nev. 2008) (en banc). The district court held that, because CoreCivic "could not act on behalf of the United States or contravene the Marshals Service's decision to incarcerate [him,]" it neither had nor breached any duty to Rivera. We find that Rivera established a triable issue as to duty and breach.

---

[14] Rivera has established a triable issue as to each element of his false imprisonment claim, as CoreCivic challenges only the causation element. We therefore reverse as to that claim. *See Jordan*, 110 P.3d at 48 ("[A]n actor is subject to liability to another for false imprisonment 'if (a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and (b) his act directly or indirectly results in such a confinement of the other, and (c) the other is conscious of the confinement or is harmed by it.'" (quoting *Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981))).

CoreCivic does not dispute that it assumed a duty of reasonable care over Rivera when it took him into its physical custody.  Restatement (Second) of Torts § 314A(4) & cmt. e (1965).  Rather, it argues that it did not breach any duty it might have had because "no reasonable jury could find that NSDC staff knew or had reason to know that [Rivera] needed help . . . or that the staff acted unreasonably to delay that help."  CoreCivic's argument is unconvincing.

Rivera's evidence, if credited by the jury, could easily establish that CoreCivic failed to exercise reasonable care when its employees did not inform the Marshals of Rivera's prolonged detention, told Rivera that he just needed to wait, implied that nothing could be done to trigger a hearing, and failed to inform him that he was in the legal custody of the Marshals and that he could request to speak with a Marshals deputy who was regularly at NSDC.  *See Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1059, 1065–66 (Nev. 2007) (en banc) (finding a triable issue as to whether prison officials breached a duty to an incarcerated person with a permanent spinal cord injury and brain damage when they released him to a residence that had no wheelchair ramp, hospital bed, or other medical supplies).  We therefore find that Rivera has established triable issues as to each element of his negligence claim.

## C. A Jury Could Reasonably Find CoreCivic's Actions Extreme or Outrageous.

To prevail on an intentional infliction of emotional distress claim, a plaintiff must prove (1) extreme and outrageous conduct; (2) intent or reckless disregard for the causing of emotional distress; (3) severe or extreme emotional distress; and (4) causation.  *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000).  The district court found that because CoreCivic did not cause Rivera's prolonged

incarceration, its conduct was not extreme and outrageous. A rational jury, however, could find that CoreCivic's conduct, which resulted in prolonged detention of nearly a year without a court appearance, was extreme and outrageous.

CoreCivic deprived Rivera of freedom from incarceration, "the paradigmatic liberty interest under the due process clause." *Oviatt*, 954 F.2d at 1474. "[F]reedom from incarceration is a vital liberty interest for those who have not been criminally convicted. It is a basic assumption with which we guide our lives: the state may not incarcerate any individual randomly and without specific protective procedures." *Id.* at 1476. And the Due Process Clause is not the only constitutional provision that protects an individual's right to be free from incarceration; the Sixth Amendment's speedy trial guarantee is "designed to minimize the possibility of lengthy incarceration prior to trial . . . and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *United States v. MacDonald*, 456 U.S. 1, 8 (1982).

Given the nature of Rivera's liberty interest, the egregious length of his detention without arraignment, the ease with which CoreCivic could have corrected the problem, and the callousness of its disregard, a rational jury could find that CoreCivic acted extremely or outrageously. *See Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (per curiam) ("[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" (quoting California Book of Approved Jury Instructions 12.74)). The record therefore shows that Rivera has established a triable issue as to each element of his claim for intentional infliction of emotional distress.

\*    \*    \*

Because we find that Rivera's claims for false imprisonment, negligence, and intentional infliction of emotional distress each survive summary judgment, the case is

**REVERSED and REMANDED.**