824 P.2d 276 (1992)
STATE OF NEVADA EMPLOYEES ASSOCIATION, INC., a Nevada Corporation, Jeanine Elliott, Bonnie Allec, Carl Barbee, Harry Gammie, Paula Tlachac, Novella Watson-Lee and Fred Suwe, Petitioners,
v.
Darrel DAINES, in his Official Capacity as Controller of the State of Nevada, Respondent.
No. 22590.
Supreme Court of Nevada.
January 2, 1992.
Norah Ann McCoy, SNEA, Carson City, for petitioners.
Frankie Sue Del Papa, Atty. Gen., Kateri Cavin, Deputy Atty. Gen., James T. Spencer, Deputy Atty. Gen., Carson City, for respondent.

*277 OPINION
PER CURIAM:
Petitioners in this original action seek a writ of mandamus compelling respondent Darrel Daines, Controller of the State of Nevada, to issue warrants for petitioners' salaries, including the four percent pay raise appropriated by the 1991 Nevada State Legislature to become effective October 1, 1991. 1991 Nev. Stat. ch. 496 at 1515 (approved June 30, 1991).
On December 13, 1991, following the oral arguments in this matter, this court directed the clerk of this court to issue a writ of mandamus compelling respondent forthwith to issue warrants sufficient to pay the salary increases provided to the classified employees of the state by the legislature. We specifically directed such salary increases to be paid retroactively from October 1, 1991, and we indicated that a formal opinion setting forth the grounds for our decision would be forthcoming. This opinion constitutes our final resolution of this proceeding.

FACTS
On June 30, 1991, the Nevada State Legislature passed a bill appropriating funds for a four percent salary increase for classified state employees. The salary increase was to become effective October 1, 1991. 1991 Nev. Stat. ch. 496 at 1515 (Assembly Bill 815). The governor signed the bill (hereinafter "the act") into law.
On September 26, 1991, at a meeting of the Nevada State Board of Examiners, the clerk of the board of examiners, based on projected revenue shortfalls, recommended that "the Board of Examiners defer allocation and disbursement of the funds appropriated for salary adjustments for up to three months from the time the legislature contemplated their enactment." The board of examiners unanimously adopted the clerk's recommendation.
As a result of the action of the board of examiners, the respondent state controller refused to issue warrants sufficient to pay the authorized salary increases in the paychecks delivered to state employees beginning on October 11, 1991. This petition followed.

DISCUSSION
Petitioners contend that, pursuant to NRS 227.160, the state controller has a non-discretionary duty resulting from his office to pay the salary increases enacted by the legislature.[1] We agree. This court has held that "[a]n appropriation of money to a specific object would be an authority to the proper officers to pay the money, because the auditor is authorized to draw his warrant upon an appropriation, and the treasurer is authorized to pay such warrant if he has appropriated money in the treasury." State v. Eggers, 29 Nev. 469, 481, 91 P. 819, 823 (1907) (quoting Ristine v. State, 20 Ind. 328). Thus, unless the act itself allows the board or the governor discretion in the payment of the salary increases, or the board or the governor are empowered by the constitution or by statute to defer payment of legislatively authorized *278 salary increases, the controller has an absolute duty pursuant to NRS 227.160 to issue his warrants according to the legislative will.
Respondent essentially concedes this point and argues correctly that "the proper analysis of this matter begins and ends with the classified pay bill." Section 1(2) of the act provides:
2. The state board of examiners, upon recommendation of the director of the department of administration, may allocate and disburse to the various departments, commissions and agencies of the State of Nevada, out of the money appropriated by this section such sums of money as may from time to time be required, which when added to the money otherwise appropriated or available equals the amount of money required to pay the salaries of the classified employees of the respective departments, commissions and agencies under the adjusted pay plan.

1991 Nev. Stat. ch. 496, § 1, at 1515 (Emphasis added.)[2]
Respondent argues that the legislature's use of the word "may" rather than "shall" in sections 1(2), 2(2) and 3(3) indicates that allocation and disbursement of the appropriated amounts to pay salary increases is discretionary with the board of examiners and the Director of the Department of Administration. We disagree.
This court has stated that in statutes, "may" is permissive and "shall" is mandatory unless the statute demands a different construction to carry out the clear intent of the legislature. Givens v. State, 99 Nev. 50, 54, 657 P.2d 97, 100 (1983). This court has also held, however, that the term "may" in a statute is conditional rather than permissive if the purpose of the statute requires that construction. Nev. Real Est. Comm. v. Ressel, 72 Nev. 79, 82, 294 P.2d 1115, 1116 (1956) ("may" in a statute was not permissive; the statute created a duty to act upon the occurrence of a specified condition, leaving "no area for the exercise of discretion"). This construction of the word "may" has been recognized in numerous cases, especially where used to define the duties of a public officer. Id.
Close examination of the language of the act in this case reveals that "may" in the act is conditional rather than permissive. Section 2(3) of the act provides that the state board of examiners "may allocate and disburse ... out of the money appropriated" such sums of money as "may from time to time be required" to "pay the salaries of the classified employees ... under the adjusted pay plan."
The "pay plan" is the grade and step salary schedule for classified employees created by the Department of Personnel pursuant to NRS 284.175. Clearly, the legislature intended that the Department of Personnel would adjust the pay plan by approximately four percent.[3] The language of the act requires the board of examiners to allocate additional funds to state agencies to meet these pay increases upon the conditions set forth, i.e., when the funds previously appropriated for salaries are insufficient to pay the salaries required under the revised grade and step pay plan.[4] *279 We conclude, therefore, that the governor and the board's decision to defer the legislatively enacted salary increases cannot be justified under the language of the act.
Respondent asserts, nevertheless, that an appropriation creates no duty that the appropriated money actually be spent. Respondent argues that because public officials are specifically prohibited from spending more than the amount appropriated but not specifically enjoined from spending less, it is permissible to spend less. See NRS 353.260(1). The instant case is not, however, a case of a public official spending less than the amount appropriated by the legislature. In this case, the legislature enacted a pay raise, designated a date on which the raise would become effective, and appropriated funds to accomplish its purpose. The executive branch has attempted to impound the funds specifically appropriated for this salary increase in a manner that would defeat the legislative purpose and essentially rewrite the act. The executive is not empowered to disregard the mandate of the legislature that certain salaries be paid. See Ellis v. City of Valdez, 686 P.2d 700, 705 (Alaska 1984) (recognizing a distinction between cases where the executive has attempted to impound funds and cases in which an agency has exercised discretion with respect to the expenditure of funds authorized for particular purposes within the expertise of the agency).
Respondent contends that the governor could order deferral of disbursement of the salary increases pursuant to the "supreme executive power" vested in him by article 5, section 1 of the Nevada Constitution.[5] Respondent has failed to cite any authority, however, for the proposition that the supreme executive power of the State of Nevada includes the power to disregard acts of the legislature. Indeed, the governor has a constitutional duty to see that the laws enacted by the legislature are faithfully executed. Nev. Const. art. 5, § 7; Galloway v. Truesdell, 83 Nev. 13, 20, 422 P.2d 237, 242 (1967) (executive power extends to carrying out and enforcing laws enacted by the legislature).
Further, it is well established that the power of controlling the public purse lies within legislative, not executive authority. See, e.g., State v. Fairbanks North Star Borough, 736 P.2d 1140 (Alaska 1987) (a statute purporting to give the governor the power to withhold or reduce the budget of state agencies was struck down as an unconstitutional delegation of legislative power); State v. State Board of Finance, 367 P.2d 925 (N.M. 1961) (statute purporting to permit state board of finance to reduce annual operating budgets struck down as violative of separation of powers doctrine); County of Oneida v. Berle, 404 N.E.2d 133 (N.Y. 1980) (governor could not reduce a lawfully enacted appropriation); see also House of Representatives v. Martinez, 555 So.2d 839, 845 (Fla. 1990) (governor may not veto one of several funding sources; he must veto all or none). Thus, the action of the governor was not authorized by his "supreme executive power."
Similarly, the board of examiners had no constitutional authority to defer salary increases enacted by the legislature and signed into law by the governor. Article 5, section 21 of the Nevada Constitution provides:
The Governor, Secretary of State and Attorney General ... shall also constitute a Board of Examiners, with power to examine all claims against the State (except salaries or compensation of Officers fixed by law) and perform such other duties as may be prescribed by law, and no claim against the State (except salaries or compensation of Officers fixed by law) shall be passed upon by the Legislature without having been considered and acted upon by said "Board of Examiners."
*280 This provision empowers the board of examiners to examine claims (except salaries or compensation of officers) against the state before the legislature passes upon such claims; there are no provisions in this section allowing the board to defer payment of a legislatively enacted salary increase after the act has been signed into law by the governor. Therefore, we conclude that there is no constitutional authority for the action of the board.
Respondent contends that the board's action was authorized by NRS 353.225, which provides for a reserve to meet emergencies. NRS 353.225 (emphasis added) provides:
1. In order to provide some degree of flexibility to meet emergencies arising during each fiscal year in the expenditures for the state distributive school account in the state general fund and for operation and maintenance of the various departments, institutions and agencies of the executive department of the state government, the chief, with the approval in writing of the governor, may require the state controller or the head of each such department, institution or agency to set aside a reserve in such amount as the chief may determine, out of the total amount appropriated or out of other funds available from any source whatever to the department, institution or agency.
2. At any time during the fiscal year this reserve or any portion of it may be returned to the appropriation or other fund to which it belongs and may be added to any one or more of the allotments, if the chief so orders in writing.
This statute authorizes "the chief" of the Budget Division of the Department of Administration, with the approval of the governor, to require the controller of the heads of various agencies within the executive branch of government to set aside reserves to meet emergencies. We cannot conclude, however, that the legislature intended, when it enacted this statute, to endow the chief of the Budget Division of the Department of Administration or the governor with power to invalidate the acts of the legislature. Nor did the legislature intend NRS 353.225(2) to be construed as an authorization for a blanket executive repeal of a pay raise enacted by it. The provision was instead intended to provide a means for the executive and the individual agencies to provide flexibility to meet emergencies by utilizing available monies from the various budgets to fund a reserve for use at a later date. We conclude that this statute, at best, is irrelevant to this case. Accordingly, we decline to consider the constitutional challenges to the statute.

CONCLUSION
The governor and the board of examiners have no constitutional or statutory authority to defer the salary increases enacted by the legislature. Thus, the action of the board taken on September 26, 1991, was a nullity, and the state controller has an absolute duty to issue his warrants pursuant to the legislative mandate. A writ of mandamus may issue to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station and where there is no plain, speedy and adequate remedy at law. See NRS 34.160; Choose Life Campaign `90' v. Del Papa, 106 Nev. 802, 801 P.2d 1384 (1990). Accordingly, we grant this petition.
MOWBRAY, C.J., SPRINGER, STEFFEN and YOUNG, JJ., and KOSACH, District Judge,[6] concur.
NOTES
[1] NRS 227.160 (emphasis added) provides, in pertinent part:

1. The state controller shall:
(a) Audit all claims against the state, for the payment of which an appropriation or authorization has been made but of which the amount has not been definitely fixed by law, which have been examined and passed upon by the state board of examiners, or which have been presented to the board and not examined and passed upon by it within 30 days from their presentation.
(b) Allow of those claims mentioned in paragraph (a) as not having been passed upon by the state board of examiners within 30 days after presentation the whole, or such portion thereof as he deems just and legal; and of claims examined and passed upon by the state board of examiners, such an amount as he decrees just and legal not exceeding the amount allowed by the board.
... .
3. For the purpose of satisfying himself of the justness and legality of any claim, he may examine witnesses under oath and receive and consider documentary evidence in addition to that furnished him by the state board of examiners. He shall draw warrants on the state treasurer for such amounts as he allows of the character above described, and also for all claims of which the amount has been definitely fixed by law and for the payment of which an appropriation or authorization has been made.
[2] The language of sections 2(2) and 3(3) is identical to that of section 1(2) except that section 2(2) applies to employees of the department of motor vehicles and public safety, the public service commission, and the attorney general's office, and section 3(3) applies to the University of Nevada System.
[3] The act refers to a raise of approximately four percent, rather than four percent, because the grade and step pay schedule created by the Department of Personnel contains specific dollar figures derived by multiplying present amounts by 1.04. The resulting figures must be rounded to the nearest whole dollar amounts.
[4] In sections 6 and 7 of the act, dealing with potential pay raises in the second biennium, the act sets forth certain amounts that are "contingently appropriated" to provide additional salary increases depending on the projected balance. These provisions do not purport to give the board of examiners discretion to disburse or not disburse the amounts needed. Rather, they direct the board to implement certain pay raises if the projected balances support the increases. Notably, the legislature did not make the payment of the October 1, 1991, pay raises dependent on any revenue or state general fund projections. This supports our conclusion that the legislature enacted salary increases and provided a fund from which to pay the increases; the legislature did not, as contended by respondent, simply appropriate funds for discretionary distribution by the executive if it determined a pay raise was warranted.
[5] Article 5, section 1 of the Nevada Constitution provides that "[t]he supreme executive power of this State, shall be vested in a Chief Magistrate who shall be Governor of the State of Nevada."
[6] The Honorable Steven R. Kosach, Judge of the Second Judicial District Court, was designated by the Governor to sit in place of The Honorable Robert E. Rose, Justice. Nev. Const. art. 6, § 4.