MOISES LEYVA, APPELLANT, *v.* NATIONAL DEFAULT SERVICING CORP.; AMERICA'S SERVICING COMPANY; AND WELLS FARGO, RESPONDENTS.

No. 55216

July 7, 2011 255 P.3d 1275

*Crosby & Associates* and *David M. Crosby* and *Troy S. Fox*, Las Vegas, for Appellant.

*Snell & Wilmer, LLP*, and *Gregory A. Brower* and *Cynthia Lynn Alexander*, Las Vegas, for Respondents America's Servicing Company and Wells Fargo.

*Wilde & Associates* and *Gregory L. Wilde*, Las Vegas, for Respondent National Default Servicing Corp.

Before the Court EN BANC.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we consider issues arising out of Nevada's Foreclosure Mediation Program. First, we must determine whether a homeowner who is not the original mortgagor is a proper party to participate in the program. We conclude that the Foreclosure Mediation statute, NRS 107.086, and the Foreclosure Mediation Rules (FMRs) dictate that a homeowner, even if he or she is not the named mortgagor, is a proper party entitled to request mediation following a notice of default.

Second, we must determine if a party is considered to have complied with the applicable statute and FMRs governing document production in a mediation proceeding by producing what the district court referred to as "essential documents." In this, we address whether substantial compliance satisfies the mandates of the statute and FMRs. Because we conclude that strict compliance is compelled by NRS 107.086(4) and (5), that the assignment offered was defective, and that no endorsement of the mortgage note was provided according to Article 3 of the Uniform Commercial Code, we conclude that Wells Fargo failed to produce the documents required under NRS 107.086(4). Additionally, we recently concluded in *Pasillas v. HSBC Bank USA*, 127 Nev. 462, 255 P.3d 1281 (2011), that a party's failure to produce the enumerated documents required by NRS 107.086 and the FMRs prohibits the district court from directing the program administrator to certify the mediation so that the foreclosure process can proceed. Here, we again conclude that, due to the statute's and the FMRs' mandatory language regarding document production, a party is considered to have fully complied with the statute and rules only upon production of all documents required. Failure to do so is a sanctionable offense, and

the district court is prohibited from allowing the foreclosure process to proceed. Therefore, we must reverse and remand this case to the district court for it to determine appropriate sanctions against respondents.[1]

## FACTS AND PROCEDURAL HISTORY

Appellant Moises Leyva received and recorded a quitclaim deed in 2007 in exchange for taking over monthly mortgage payments on a residence in Las Vegas. Leyva did not expressly assume the mortgage note, however, and it remained in the original mortgagor's name, Michael Curtis Ramos. Nonetheless, Leyva made the mortgage payments in Leyva's name to respondent Wells Fargo's servicing company for 25 months. Thereafter, Leyva defaulted on the mortgage and, upon receiving a notice of election to sell, decided to pursue mediation through the Foreclosure Mediation Program. Both he and Ramos signed the form electing to mediate. The mediation occurred on September 23, 2009,[2] and Leyva, Ramos, and Wells Fargo were represented by counsel at the mediation. Leyva was present at the mediation, while Ramos was available by telephone. At the mediation, Wells Fargo produced a certified copy of the original deed of trust and mortgage note, on both of which MortgageIT, Inc., not Wells Fargo, was named as the lender, as well as a notarized statement from a Wells Fargo employee asserting that Wells Fargo was in possession of the deed of trust and mortgage note, as well as any assignments thereto. Wells Fargo did not submit copies of any assignments. The parties failed to resolve the foreclosure at the mediation, and the mediator's statement indicated that Wells Fargo failed to bring the statutorily required documents to the mediation. The mediator did not, however, indicate that Wells Fargo participated in the mediation in bad faith.

Leyva then filed a petition for judicial review in district court, claiming that Wells Fargo mediated in bad faith and that it should be sanctioned. After conducting hearings on the petition, the district court found that

---

[1]Because we reverse on other grounds, we do not reach Leyva's contention that respondent Wells Fargo also participated in the mediation in bad faith because it refused to offer anything other than a cash-for-keys option to avoiding foreclosure.

[2]Therefore, this mediation was governed by the Foreclosure Mediation Rules in·effect from July 31, 2009, until September 28, 2009, at which time the rules were amended. *See In the Matter of the Adoption of Rules for Foreclosure Mediation*, ADKT 435 (Order Adopting Foreclosure Mediation Rules, June 30, 2009, and Order Amending Foreclosure Mediation Rules and Adopting Forms, September 28, 2009). Although the changes required some renumbering of the rules, the language of the rules important to this case, namely, those specifying who can participate in the mediation and the documents that must be provided, remain essentially the same.

there is a lack of showing of bad faith on the part of [Wells Fargo] in that all *essential* documents were provided, contrary to the indication of the mediator, and that [Wells Fargo] otherwise negotiated in good faith notwithstanding the fact that an agreement was not reached.

Absent timely appeal, a Letter of Certification shall enter.

(Emphasis added.) This appeal followed.[3]

## DISCUSSION

In resolving this appeal, as a preliminary matter, we must determine whether Leyva could properly elect to mediate and participate in the mediation even though he was not a named party on the mortgage note and did not assume the note in his purchase of the residence. Determining that he could participate as the title holder of record, we next consider whether the district court erred in finding that Wells Fargo brought "all *essential* documents" to the mediation. In doing so, we address Wells Fargo's argument that possessing the original mortgage note and deed of trust is sufficient to demonstrate ownership of the same. We conclude that Wells Fargo failed to produce the documents required under the applicable statute and FMRs and to otherwise show that it had an enforceable interest in the property subject of the mediation. Accordingly, the district court abused its discretion, and sanctions are warranted pursuant to our holding in *Pasillas*, 127 Nev. at 469, 255 P.3d at 1286-87.

### Leyva was a proper party to the mediation

Wells Fargo first argues that because Leyva was neither the grantor on the deed of trust nor the obligor on the note, he was not a proper party to the mediation. We disagree.

NRS 107.086(3) allows "[t]he grantor *or* the person who holds the title of record" to elect to mediate. (Emphasis added.) Similarly, FMR 5(1) states that "any grantor *or* person who holds the title of record and is the owner-occupant of a residence" is eligible to participate in the Foreclosure Mediation Program. (Emphasis added.) Leyva recorded his ownership of the subject property in March 2007 and is therefore clearly the title holder of record eligible to participate in the Foreclosure Mediation Program.

Even though the mortgage note remained in Ramos's name, this bifurcation of title ownership and liability on the note served only to potentially limit the foreclosure solutions available to Leyva

---

[3]This court has jurisdiction over the appeal from the district court's final order in the judicial review proceeding. Nev. Const. art. 6, § 4; NRAP 3A(b)(1).

at the mediation, not to exclude all possible remedies. And while Wells Fargo argues that modification was not an option because Leyva lacked authority over the loan, the record reflects that Ramos, the person with such authority, signed the election-of-mediation form, was represented by counsel at the mediation, and was available by telephone during the mediation. Therefore, Wells Fargo's argument lacks merit. Regardless, because both NRS 107.086(3) and FMR 5(1) permit the person holding the title of record to mediate, and Wells Fargo does not dispute that Leyva possessed a valid, recorded quitclaim deed, we conclude that Leyva could properly elect to mediate and was eligible to participate in the Foreclosure Mediation Program.

*Wells Fargo failed to meet the mediation program's documentation requirements, compelling consideration of sanctions*

In *Pasillas*, we held that if a party fails to (1) provide the required documents, or (2) either attend the mediation in person or, if the beneficiary attends through a representative, that person fails to have authority to modify the loan or access to such a person, the district court is required to impose appropriate sanctions. 127 Nev. at 467-68, 255 P.3d at 1284-85. Here, despite Wells Fargo's failure to bring the assignments for the mortgage note and deed of trust, the district court refused to impose sanctions.[4] "[W]e . . . review a district court's decision regarding the imposition of sanctions for a party's participation in the Foreclosure Mediation Program under an abuse of discretion standard." *Id* at 468, 255 P.3d at 1286.

Wells Fargo concedes that it did not provide written assignments of the deed of trust and mortgage note as required by NRS 107.086(4) and FMR 5(6). Nevertheless, it argues that it fulfilled the purpose of the statute and rule, and thus, its failure to bring actual copies of any assignments was harmless. In essence, Wells Fargo asserts that its failure to strictly comply with the statute's and FMRs' requirements should not subject it to sanctions, because it substantially complied with those requirements.

"Substantial compliance may be sufficient 'to avoid harsh, unfair or absurd consequences.' Under certain procedural statutes and rules, however, failure to strictly comply . . . can be fatal to a case." *Leven v. Frey*, 123 Nev. 399, 407, 168 P.3d 712, 717 (2007) (quoting 3 Norman J. Singer, *Statutes and Statutory Construction* § 57:19, at 58 (6th ed. 2001)). To determine whether a

---

[4]At the time the district court entered its order, the *Pasillas* opinion had not been published.

statute and rule require strict compliance or substantial compliance, this court looks at the language used and policy and equity considerations. *Id.* at 406-07, 168 P.3d at 717. In so doing, we examine whether the purpose of the statute or rule can be adequately served in a manner other than by technical compliance with the statutory or rule language. *See id.* at 407 n.27, 168 P.3d at 717 n.27 (citing *White v. Prince George's County*, 877 A.2d 1129, 1137 (Md. Ct. Spec. App. 2005) ("Where the purpose of the notice requirements is fulfilled, but not necessarily in a manner technically compliant with all of the terms of the statute, this Court has found such substantial compliance to satisfy the statute." (internal quotation omitted))).

Here, both the statutory language and that of the FMRs provide that the beneficiary "shall" bring the enumerated documents, and we have previously recognized that " 'shall' is mandatory unless the statute demands a different construction to carry out the clear intent of the legislature." *S.N.E.A. v. Daines*, 108 Nev. 15, 19, 824 P.2d 276, 278 (1992); *see also Pasillas*, 127 Nev. at 467, 255 P.3d at 1285. The legislative intent behind requiring a party to produce the assignments of the deed of trust and mortgage note is to ensure that whoever is foreclosing "actually owns the note" and has authority to modify the loan. *See* Hearing on A.B. 149 Before the Joint Comm. on Commerce and Labor, 75th Leg. (Nev., February 11, 2009) (testimony of Assemblywoman Barbara Buckley). Thus, we determine that NRS 107.086 and the FMRs necessitate strict compliance.

Because we conclude that strict compliance is necessary, we must discuss what constitutes a valid assignment of deeds of trust and mortgage notes. Transfers of deeds of trust and mortgage notes are distinctly separate, thus we discuss each one in turn.

*The deed of trust, with any assignments, identifies the person who is foreclosing*

In this case, Wells Fargo was not the original named beneficiary on the deed of trust, but it contends on appeal that it has the right to foreclose as the assignee of the original beneficiary, MortgageIT. Although Wells Fargo conceded during oral argument that it did not provide the written assignment, it claims that because it provided a certified copy of the deed of trust and a notarized statement from its employee claiming that it was the rightful owner of the deed of trust, no written assignment was necessary. We disagree.

A deed of trust is an instrument that "secure[s] the performance of an obligation or the payment of any debt." NRS 107.020. This court has previously held that a deed of trust "constitutes a con-

veyance of land as defined by NRS 111.010."[5] *Ray v. Hawkins*, 76 Nev. 164, 166, 350 P.2d 998, 999 (1960). The statute of frauds governs when a conveyance creates or assigns an interest in land:

> No estate or interest in lands, . . . nor any trust or power over or concerning lands, or in any manner relating thereto, shall be created, granted, *assigned*, surrendered or declared . . . , unless . . . by deed or conveyance, in writing, subscribed by the party creating, granting, *assigning*, surrendering or declaring the same, or by the party's lawful agent thereunto authorized in writing.

NRS 111.205(1) (emphases added). Thus, to prove that MortgageIT properly assigned its interest in land via the deed of trust to Wells Fargo, Wells Fargo needed to provide a signed writing from MortgageIT demonstrating that transfer of interest. No such assignment was provided at the mediation or to the district court, and the statement from Wells Fargo itself is insufficient proof of assignment. Absent a proper assignment of a deed of trust, Wells Fargo lacks standing to pursue foreclosure proceedings against Leyva.

### *Mortgage note*

The proper method of transferring the right to payment under a mortgage note is governed by Article 3 of the Uniform Commercial Code Negotiable Instruments, because a mortgage note is a negotiable instrument.[6] *Birkland v. Silver State Financial Services, Inc.*, No. 2:10-CV-00035-KJD-LRL, 2010 WL 3419372, at *4 (D. Nev. Aug. 25, 2010). The obligor on the note has the right to know the identity of the entity that is "entitled to enforce" the mortgage note under Article 3, *see* NRS 104.3301, "[o]therwise, the [homeowner] may pay funds to a stranger to the case." *In re Veal*, 450 B.R. 897, 920-21 (B.A.P. 9th Cir. 2011) (holding, in a bankruptcy case, that AHMSI did not prove that it was the party entitled to enforce, and receive payments from, a mortgage note because it "presented no evidence as to who possessed the original Note. It also presented no evidence showing [e]ndorsement of the note either in its favor or in favor of Wells Fargo, for whom AHMSI allegedly was servicing the [bankrupt party's] Loan."). If the homeowner pays funds to a "stranger to the case," then his or her obligation on the note would not be reduced by the payments made. *See id.* at 910 ("if a[n obligor on a mortgage note] makes

---

[5] "'Conveyance' shall be construed to embrace every instrument in writing, except a last will and testament, whatever may be its form, and by whatever name it may be known in law, by which any estate or interest in lands is created, aliened, assigned or surrendered." NRS 111.010(1).

[6] Article 3 is codified in NRS 104.3101-.3605.

a payment to a 'person entitled to enforce,' the obligation is satisfied on a dollar for dollar basis, and the [obligor] never has to pay that amount again'').

Wells Fargo argues that, under Nevada law, possession of the original note allowed it to enforce the note. We disagree and take this opportunity to clarify the applicability of Article 3 to mortgage notes, as we anticipate increasing participation in the Foreclosure Mediation Program, as well as a corresponding increase in the number of foreclosure appeals in this state. As discussed below, we conclude that Article 3 clearly requires Wells Fargo to demonstrate more than mere possession of the original note to be able to enforce a negotiable instrument under the facts of this case.

Pursuant to NRS 104.3102(1), Article 3 applies to negotiable instruments. Negotiable instruments are defined as

> an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (a) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (b) Is payable on demand or at a definite time; and
>
> (c) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money.

NRS 104.3104(1). Thus, a mortgage note is a negotiable instrument, and any negotiation of a mortgage note must be done in accordance with Article 3.

A note can be made payable to bearer or payable to order. NRS 104.3109. If the note is payable to bearer, that "indicates that the person in possession of the promise or order is entitled to payment." NRS 104.3109(1)(a). However, "[a] promise or order that is not payable to bearer is payable to order if it is payable to the order of an identified person . . . . A promise or order that is payable to order is payable to the identified person." NRS 104.3109(2).

For a note in order form to be enforceable by a party other than to whom the note is originally payable, the note must be either negotiated or transferred.[7] A " '[n]egotiation' means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." NRS 104.3201(1). "[I]f an instrument is payable to an identified person, negotiation requires transfer of possession of the

---

[7]Since the documents provided at the mediation did not establish transfer of either the mortgage or the note, we express no opinion on the issue addressed in the Restatement (Third) of Property: Mortgages section 5.4 concerning the effect on the mortgage of the note having been transferred or the reverse.

instrument *and* its endorsement by the holder."[8] NRS 104.3201(2) (emphasis added). An "endorsement" is a signature that is "made on an instrument for the purpose of negotiating the instrument." NRS 104.3204(1). Thus, if the note is payable to the order of an identifiable party, but is then sold or otherwise assigned to a new party, it must be endorsed by the party to whom it was originally payable for the note to be considered properly negotiated to the new party. Once a proper negotiation occurs, the new party, or "note holder," with possession is entitled to enforce the note. NRS 104.1201(2)(u)(1) ("Holder means . . . [t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession.").

If a party cannot attain "holder" status by showing a valid negotiation, the party may establish its right to enforce the note by showing that the note has been validly transferred. NRS 104.3203(2). The only distinction between a negotiation and a transfer is that, in the case of a transfer, the note need not be endorsed by the party who is relinquishing enforcement rights. Because a transferred note is not endorsed, however, the party seeking to establish its right to enforce the note "must account for possession of the unendorsed instrument by proving the transaction through which the transferee acquired it." U.C.C. § 3-203 cmt. 2 (explaining the effect of § 3-203(b), codified in Nevada as NRS 104.3203(2)). In other words, because the party seeking to enforce the note cannot "prove" its right to enforce through the use of a valid endorsement, the party must "prove" by some other means that it was given possession of the note for the purpose of enforcing it.[9]

In this case, the adjustable rate mortgage note provides: "In return for a loan that I have received, I promise to pay U.S. $192,000.00 . . . plus interest, *to the order of Lender.* Lender is [MortgageIT, Inc.]" (emphasis added). Because the mortgage note is payable to the order of a specific party, MortgageIT, to negotiate the note to a new party, in this case Wells Fargo, Wells Fargo must have possession of the note and the note must be properly endorsed by MortgageIT. *See* NRS 104.3201(2). No such endorsement was included in the documents produced at mediation or in the documents filed with the district court, nor was a valid assignment produced as proof of the note's transfer, and mere possession does not entitle Wells Fargo to enforce the note. Therefore,

---

[8]Under NRS 104.3301(1)(a), a person entitled to enforce an instrument is "[t]he holder of the instrument."

[9]To "prove" a transaction under NRS 104.3203(2), a party must present evidence sufficient to establish that it is more likely than not that the transaction took place. NRS 104.3103(1)(i) (defining "prove"); NRS 104.1201(2)(h) (defining "burden of establishing").

because the mortgage note is payable to MortgageIT, unless Wells Fargo can prove that the note was properly endorsed or validly transferred, thereby making it the party entitled to enforce the note, it has not demonstrated authority to mediate the note.

As we concluded in *Pasillas*, a foreclosing party's failure to bring the required documents to the mediation is a sanctionable offense under NRS 107.086 and the FMRs. Therefore, we conclude that the district court abused its discretion when it denied Leyva's petition for judicial review. Accordingly, we reverse the district court's order and remand this matter to the district court with instructions to determine the appropriate sanctions for Wells Fargo's violation of the statutory and rule-based requirement. In doing so, the district court should consider the factors discussed in *Pasillas*.[10]

DOUGLAS, C.J., and CHERRY, SAITTA, GIBBONS, PICKERING, and PARRAGUIRRE, JJ., concur.

---

[10]In *Pasillas*, we concluded that the following nonexhaustive list of factors would aid district courts in determining what sanctions are appropriate: "whether the violations were intentional, the amount of prejudice to the nonviolating party, and the violating party's willingness to mitigate any harm by continuing meaningful negotiation." *Pasillas v. HSBC Bank USA*, 127 Nev. 462, 470, 255 P.3d 1281, 1287 (2011).