**133 Nev., Advance Opinion 60**

IN THE SUPREME COURT OF THE STATE OF NEVADA

O.P.H. OF LAS VEGAS, INC.,
Appellant,
vs.
OREGON MUTUAL INSURANCE
COMPANY; DAVE SANDIN; AND
SANDIN & CO.,
Respondents.

No. 68543

FILED

SEP 14 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from district court orders granting summary judgment in an action by an insured against its insurer and its broker arising out of cancellation of a fire insurance policy. Eighth Judicial District Court, Clark County; Gloria Sturman, Judge.

*Affirmed in part, reversed in part, and remanded.*

McLetchie Shell, LLC, and Margaret A. McLetchie and Alina M. Shell, Las Vegas,
for Appellant.

Hutchison & Steffen, LLC and Michael K. Wall, Patricia M. Lee, and Michael S. Kelley, Las Vegas,
for Respondents Dave Sandin and Sandin & Co.

Lewis Brisbois Bisgaard & Smith LLP and Robert W. Freeman, Jr., and Priscilla L. O'Briant, Las Vegas,
for Respondent Oregon Mutual Insurance Company.

BEFORE DOUGLAS, GIBBONS and PICKERING JJ.

*OPINION*

By the Court, PICKERING, J.:

In this insurance policy cancellation dispute, we are asked to resolve two issues. The first is whether NRS 687B.360 requires a cancellation notice to contain a statement of a policyholder's right to request additional information to be effective. We hold that NRS 687B.360 requires strict compliance; without an express statement of a policyholder's right to request additional information about the reasons for a policy's cancellation, the cancellation notice is ineffective. Because the insurance company's cancellation notice failed to provide the statement required by NRS 687B.360, the policy remained in effect at the time of loss. We therefore reverse the district court's grant of summary judgment for the insurance company and remand so the insured may pursue its claims against the insurer.

The second issue is whether, under Nevada law, an insurance broker who obtains an insurance policy for a client has a duty to monitor the client's premium payments and to alert the client when the policy is about to be canceled for nonpayment of premiums. We hold that the relationship between the insurance broker and the insured client in this case did not give rise to such a duty. We therefore affirm summary judgment in favor of the broker against the insured.

I.

Unless otherwise noted, the following facts are undisputed: Appellant O.P.H. of Las Vegas, Inc. operated an Original Pancake House restaurant in Las Vegas. Between 2002 and 2012, respondent Dave Sandin or Sandin & Co. served as the insurance broker for OPH (except for a two-year period when OPH used another broker). In December 2011, Sandin recommended that OPH purchase a Business Owner Protector

 

policy[1] for the restaurant from respondent Oregon Mutual Insurance Co., which OPH did. The policy term ran from December 26, 2011, until December 26, 2012, and permitted periodic premium payments.

On July 26, 2012, OPH defaulted on its obligation to pay the premium for which it had been billed earlier in the month. Five days later, Oregon Mutual issued OPH a cancellation notice (Notice). The Notice stated that Oregon Mutual would cancel the policy on August 16, 2012, if it did not receive payment by August 15, 2012. The Notice did not inform OPH of its right under NRS 687B.360 to request and receive within 6 days additional information if needed to relay "with reasonable precision" the facts on which OPH based its cancellation decision.

Though OPH denies receiving the Notice, Oregon Mutual attests that it mailed the Notice to OPH on August 1, 2012. Oregon Mutual did not mail a copy of the Notice to the broker, Sandin. On August 13, 2012, OPH realized that it had not made its July premium payment, wrote a check for the premium due, then failed to mail the payment to Oregon Mutual. On August 17, 2012, a fire destroyed the Original Pancake House. OPH reported the loss and submitted a claim under the policy. Oregon Mutual denied coverage, stating that the policy had been canceled for failure to pay the premium effective August 16, 2012, the day before the fire.

OPH sued Oregon Mutual, Sandin, and Sandin & Co. on various theories, including, as against Oregon Mutual, breach of contract,

---

[1]A Businessowner's Policy is an insurance policy that typically includes property insurance, business interruption insurance, and liability protection. *What Does a Businessowner's Policy (BOP) Cover?* Insurance Information Institute (July 18, 2017, 4:24 p.m.), http://www.iii.org/article/what-does-businessowners-policy-bop-cover.

bad faith and negligence and, as against the Sandin defendants, breach of fiduciary duty. Early on in the case, OPH filed a motion for partial summary judgment against Oregon Mutual on the ground the Notice did not comply with NRS 687B.360 and thus had no effect. The district court denied the motion. After conducting discovery, Oregon Mutual moved for summary judgment asserting that the policy did not cover the loss because it had been validly canceled for nonpayment of premiums before the fire occurred. The Sandin defendants also filed a motion for summary judgment in which they disclaimed any duty to monitor and notify OPH of its premium payment default. The district court granted both motions, and OPH appeals.

## II.

### A.

Whether NRS 687B.360 invalidates Oregon Mutual's notice of cancellation presents an issue of law that we review de novo. *See State, Div. of Ins. v. State Farm Mut. Auto. Ins. Co.*, 116 Nev. 290, 293, 995 P.2d 482, 484 (2000) ("review in this court from a district court's interpretation of a statute is de novo") (internal quotation and editing marks omitted); *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) ("[t]his court reviews a district court's grant of summary judgment de novo").

Like most states, Nevada has enacted statutes that restrict the permissible bases for, and impose procedural limits on, an insurer's ability to cancel an insurance policy midterm. *See* NRS 687B.310-NRS 687B.420; for a general discussion see Eric Mills Holmes, *Holmes's Appleman on Insurance 2d*, § 16.10, at 423 (2016). These statutes aim to provide policyholders "protection against arbitrary termination" of insurance coverage, NRS 687B.310(3), and provide rights that "are in

addition to and do not prejudice any other rights the policyholder may have at common law or under other statutes," NRS 687B.310(4). Here, Oregon Mutual's cancellation Notice complied with NRS 687B.320(1)(a) and (2), which allow an insurer to cancel a policy for "[f]ailure to pay a premium when due" on 10 days' written notice. The Notice also complied with NRS 687B.310(6), which specifies how an insurer must deliver a notice of cancellation, and requires that it "state the effective date of the cancellation . . . and be accompanied by a written explanation of the specific reasons for the cancellation." The question presented is whether the Notice needed to comply with NRS 687B.360 as well, and, if so, whether strict compliance was required or substantial compliance would do.

> NRS 687B.360 reads in full as follows:
>
> If a notice of cancellation or nonrenewal under NRS 687B.310 to 687B.420, inclusive, does not state with reasonable precision the facts on which the insurer's decision is based, the insurer shall supply that information within 6 days after receipt of a written request by the policyholder. *No notice is effective unless it contains adequate information about the policyholder's right to make such a request.*

(Emphasis added.)

Oregon Mutual's Notice did not advise OPH that it had the right to request additional information about the reason for the cancellation and to receive a response, if appropriate, within 6 days. Oregon Mutual offers two reasons why its failure to include the information NRS 687B.360 seemingly requires does not invalidate the Notice. First, Oregon Mutual argues that the Notice "state[d] with reasonable precision the facts" on which Oregon Mutual based its cancellation decision, to wit: OPH did not pay the $2,822 premium by its

due date. Since NRS 687B.360 only requires the insurer to supply additional information "if" the notice of cancellation "does not state with reasonable precision the facts" underlying the cancellation decision, and here, the cancellation Notice gave all the information there was to give, Oregon Mutual maintains that the second sentence in NRS 687B.360, requiring that the Notice advise the insured of its right to additional information on request, never came into play. Second, Oregon Mutual argues that, even if the Notice did not literally comply with NRS 687B.360, it substantially did so. As support, Oregon Mutual points to the facts that the Notice directed OPH to call Sandin with any questions, giving Sandin's contact information, and that, on the back of the Notice, Oregon Mutual provided "information describ[ing] the billing practices of Oregon Mutual," which included a "billing customer service" 800 number the insured could call.

Neither argument carries. Textually, NRS 687B.360 does not condition its requirement that a notice of cancellation tell the insured about the insured's right to ask for and receive additional information on the notice providing incomplete information. By law, a notice of cancellation is already required to "be accompanied by a written explanation of the specific reasons for the cancellation." NRS 687B.310(6). NRS 687B.360 establishes the further right of a policyholder to request and receive additional information on 6 days' written request if the notice "does not state with reasonable precision the facts on which the insurer's [cancellation] decision is based"—and to be advised of this right in the notice itself. And, as written, NRS 687B.360 categorically invalidates a notice of cancellation that does not include this advice: *"No notice is*

*effective* unless it contains adequate information about the policyholder's right to make such a request." (Emphasis added.)[2]

"[I]n determining whether strict or substantial compliance [with a statute] is required, courts examine the statute's provisions, as well as policy and equity considerations." *Leven v. Frey*, 123 Nev. 399, 406-07, 168 P.3d 712, 717 (2007). "Substantial compliance may be sufficient 'to avoid harsh, unfair or absurd consequences.'" *Id.* at 407, 168 P.3d at 717 (quoting 3 Norman J. Singer, *Statutes and Statutory Construction* § 57:19, at 58 (6th ed. 2001)). The question is whether "the purpose of the statute . . . can be adequately served in a manner other than by technical compliance with the statutory . . . language." *Leyva v. Nat'l Default Servicing Corp.*, 127 Nev. 470, 476, 255 P.3d 1275, 1278 (2011).

Oregon Mutual makes a strong substantial compliance case. The notice was clear; it unequivocally stated that Oregon Mutual would cancel the policy due to OPH's failure to pay its premium; and it otherwise

---

[2]The Nevada Division of Insurance agrees:

> If a notice of cancellation or nonrenewal does not state with reasonable precision the facts on which the insurer's decision is based, the insurer shall supply that information within 6 days after receipt of a written request by the policyholder. *No notice is effective unless it contains adequate information about the policyholder's right to make such a request even if the notice does include the reason for cancellation or nonrenewal.*

Nevada Division of Insurance, Property and Casualty Review Standards Checklist, updated 2014, 4th ed., doi.nv.gov/.../_public-documents/ Insurers/ReviewStandardsChecklist.pdf (last visited Aug. 28, 2017) (emphasis added) (2012 Standards identical to text quoted above).

complied with NRS 687B.310 through NRS 687B.420. Invalidating the Notice because it failed to include the statutorily required language regarding the insured's right to request information about the cancellation when there was no more information to provide seems illogical, especially since OPH denied receiving the Notice. It also seems unfair, since the loss occurred before Oregon Mutual could send a second, properly worded notice.[3]

But the arguments for strict compliance are more compelling. Judicially relaxing the statute's literal requirements and accepting substantial compliance as good enough would disserve NRS 687B.360's plain text and invite litigation and its attendant uncertainty. NRS 687B.310 through NRS 687B.420 are "designed to protect individuals from the arbitrary actions of insurers who cancel insurance policies without [adequate] notice to their insureds" and reflect the "state's overriding concerns of protecting its citizens and insuring that they are afforded fair and equitable treatment by insurers." *Daniels v. Nat'l Home Life Assurance Co.*, 103 Nev. 674, 677, 747 P.2d 897, 899 (1987). For these and related reasons, most states hold that statutes imposing requirements on cancellation notices "are to be strictly construed" such that "[n]otices not conforming to the statutory requirements [are] ineffective to terminate the insurance contract for nonpayment of premiums. Even if a policy is in default, recovery may be had for a loss occurring prior to the time a

---

[3]Of note, Oregon Mutual sent a second notice of cancellation, dated August 21, 2012, which advised, "If this notice of cancellation or non-renewal does not state the facts on which our decision is based we will supply that information within 6 days after receipt of a written request by you." By then, the fire had occurred.

[statutorily compliant] notice of termination was given." *Appleman on Insurance, supra,* § 16.10, at 446-47 (footnote omitted).

The California court of appeal addressed a challenge similar to that presented here in *Lee v. Industrial Indemnity Co.,* 223 Cal. Rptr. 254 (1986). In *Lee,* the insurer sent the insured a notice of cancellation for nonpayment of premium that did not advise the insured, as required by then-current California law, "that, upon written request of the named insured, the insurer shall furnish the facts on which the cancellation is based." *Id.* at 256 n.1 (quoting 1972 Cal. Stat., ch. 237, § 1(677), at 478). The district court granted summary judgment for the insurer and denied the insured's cross-motion for summary judgment, holding that the notice substantially complied with the statute. The court of appeal reversed and entered summary judgment for the insured, holding that the statute imposed a mandatory requirement on the insurer, noncompliance with which invalidated the notice of cancellation. *See id.* at 257-58; *accord Grubbs v. Credit Gen. Ins. Co.,* 939 S.W.2d 290, 294 (Ark. 1997) ("strict compliance with the cancellation statute is what is mandated—not substantial compliance"); *Reynolds v. Infinity Gen. Ins. Co.,* 694 S.E.2d 337, 340 (Ga. 2010) ("to effect a cancellation of insurance coverage, the language of the statute is to be strictly construed against the insurer . . . . And, until the statutory notice requirements are met, the policy remains in effect."); *Dorsey v. Mich. Mut. Liab. Co.,* 250 N.W.2d 143, 145 (Mich. Ct. App. 1976) (requiring strict compliance with the statutory notice requirements and noting that, to hold otherwise, would defeat the "salutary goal of the notice statute, that is, the desire to avoid embroiling the courts in needless litigation on the question of whether or not a cancellation notice had been received"); *Blanks v. Farmers Ins. Co.,* 97 S.W.3d 1, 5 (Mo. Ct. App. 2002) ("To cancel an insurance policy, strict

Supreme Court
of
Nevaoa

(O) 1947A

9

compliance with all the notice requirements is a prerequisite, even when such requirements are unreasonable."); *Pearson v. Nationwide Mut. Ins. Co.*, 382 S.E.2d 745, 750 (N.C. 1989) ("strict compliance by the insurer with a statute governing cancellation notices is essential to effect cancellation by such notices").

Oregon Mutual notes that, after *Lee*, the California legislature amended its statute to exempt premium nonpayment cancellations from the requirement that the insurer advise the insured of its right to additional information. *See* Cal. Ins. Code § 677 (West 1987). But this change in California statutory law favors OPH, not Oregon Mutual, because it underscores the fact that it is the legislature, not the courts, that scripts the requirements for a valid notice of cancellation. As written, NRS 687B.360 applies to premium nonpayment cancellations equally with other cancellations permitted by NRS 687B.320(1). While many premium-nonpayment cancellations are cut-and-dried, not all are. *See Lee*, 223 Cal. Rptr. at 257 (noting the confusion the insurer engendered by sending multiple premium billings, in varying amounts). The Legislature can and has treated premium-nonpayment cancellations differently from other types of cancellations as it deems apt. *See* NRS 687B.370 (specifically excepting premium nonpayment cancellations from the requirement that the notice of cancellation provide information about applying for insurance through a voluntary or mandatory risk-sharing plan). That the Legislature has not done so when it comes to NRS 687B.360's requirement that, to be effective, a notice of cancellation must advise the insured of the insured's right to request additional information, reflects a legislative policy judgment we should respect. *See Daniels*, 103 Nev. at 678, 747 P.2d at 900 ("If the statute under consideration is clear on its face, we cannot go beyond it . . . .").

Our holding that NRS 687B.360 requires strict, not substantial, compliance disposes of Oregon Mutual's back-up argument that the notice sufficiently complied with NRS 697B.360 to pass muster. The Notice did not inform OPH of its right to request additional information from Oregon Mutual about the reasons for the cancellation. Advising the insured that it could contact its broker is not enough. Nor was it enough to provide an 800 number on the back of the Notice that the insured could call with billing inquiries. For these reasons, we reverse the district court's decision to grant summary judgment in favor of Oregon Mutual.

## B.

We turn next to OPH's appeal of the district court's summary judgment order in favor of Sandin. OPH urges us to hold that Sandin had a "de facto fiduciary duty" to monitor OPH's premium payments and to alert OPH when its policy was at risk of cancellation for nonpayment of premiums. The existence of duty presents a question of law; if no duty is owed to the plaintiff by defendant, then summary judgment is appropriate. *Turner v. Mandalay Sports Ent., LLC*, 124 Nev. 213, 220-21, 180 P.3d 1172, 1177 (2008); *see Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 823, 221 P.3d 1276, 1280 (2009).

In Nevada, an agent or broker has a duty "to use reasonable diligence to place the insurance and seasonably to notify the client if he is unable to do so." *Keddie v. Beneficial Ins., Inc.*, 94 Nev. 418, 420, 580 P.2d 955, 956 (1978); *see Havas v. Carter*, 89 Nev. 497, 499-500, 515 P.2d 397, 398-99 (1973). OPH cites no case holding that an insurance broker owes a duty to monitor its insured client's premium payments and to alert the client when the policy is about to be canceled for nonpayment of premiums. "The duty of a broker, by and large, is to use reasonable care,

diligence, and judgment in procuring the insurance requested by its client." *Kotlar v. Hartford Fire Ins. Co.*, 100 Cal. Rptr. 2d 246, 250 (Ct. App. 2000). As even OPH recognizes, the usual "relationship between an insurance broker and its client is not the kind which would logically give rise to" a duty to monitor and remind the client about overdue premium payments. *Id.*

We recognize that an insurance broker may assume additional duties to its insured client in special circumstances. *See* Gary Knapp, Annotation, *Liability of Insurer or Agent of Insurer for Failure to Advise Insured as to Coverage Needs*, 88 A.L.R. 4th 249, § 2[a] (1991) (collecting cases). But here, the record does not establish that Sandin undertook the duty OPH claims. Oregon Mutual sent its premium billings to OPH, not Sandin. OPH cites three instances over a ten-year period in which its broker alerted it to a past-due premium, but two of the three times this occurred, Sandin was working elsewhere, meaning the broker who provided OPH notice of impending cancellation was someone other than Sandin. This is not enough to establish a genuine issue of material fact sufficient to defeat summary judgment in favor of Sandin.

### III.

We thus affirm the order of summary judgment for Dave Sandin and Sandin & Co., reverse the order of summary judgment for

Oregon Mutual Insurance Company, and remand this case to the district court for proceedings consistent with this opinion.

_____ , J.
Pickering

We concur:

_____ , J.
Douglas

_____ , J.
Gibbons